

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| KATHY GUERRA, Derivatively on behalf of EXCO RESOURCES, INC., | |
| Plaintiff, | |
| v. | |
| DOUGLAS H. MILLER, STEPHEN F. SMITH, JEFFREY D. BENJAMIN, VINCENT J. CEBULA, EARL E. ELLIS, B. JAMES FORD, MARK MULHERN, T. BOONE PICKENS, JEFFREY S. SEROTA, ROBERT L. STILLWELL, OAKTREE CAPITAL MANAGEMENT, L.P., and ARES MANAGEMENT, LLC, | Case Number **3-10 CV 2 3 8 5 - 0** |
| Defendants. | |
| and | |
| EXCO RESOURCES, INC., A Texas Corporation, | |
| Nominal Defendant | JURY TRIAL DEMANDED |

**SHAREHOLDER DERIVATIVE COMPLAINT**
**FOR BREACH OF FIDUCIARY DUTY**

Plaintiff Kathy Guerra, for her Derivative Complaint for Breach of Fiduciary Duty, alleges upon personal knowledge as to herself and her own acts, and upon information and belief derived from, *inter alia*, a review of documents filed with the Securities Exchange Commission ("SEC") and publicly available news sources, such as newspaper articles, as to all other matters, as follows:

1.      This is a shareholder derivative action brought by plaintiff on behalf of nominal defendant Exco Resources, Inc. ("Exco" or the "Company") to enjoin both the process by which

interested directors are determining whether a management led buyout of the Company is fair and, ultimately, the proposed acquisition of the publicly owned shares of Exco common stock, itself, by the Company's Chairman and Chief Executive Officer Douglas H. Miller ("Miller"), together with Oaktree Capital Management, L.P. ("Oaktree"), Ares Management LLC ("Ares"), and T. Boone Pickens ("Pickens") in a management led buyout (the "Proposed Buyout").

2.      By virtue of self-interestedness that has infected both the Proposed Buyout and the process by which the members of Exco's Board of Directors are considering whether to accept it, defendants have breached their fiduciary duties of loyalty to Exco and its shareholders in violation of Exco's own Code of Conduct and Texas law. Pursuant to Texas law, therefore, an independent, disinterested party should be appointed to consider whether the process for considering the Proposed Buyout and the Proposed Buyout itself are fair to Exco.

3.      Alternatively, in the event that the Proposed Buyout is consummated, plaintiff seeks to recover damages caused by the breach of fiduciary duties owed by the Individual Defendants (as defined below). The Proposed Buyout and the acts of the Individual Defendants, as more particularly alleged herein, constitute a breach of defendants' fiduciary duties to the Company and its public shareholders and are a violation of applicable legal standards governing the defendants' conduct.

4.      Plaintiff has made demand upon the Board of Directors of Exco to reconstitute the process by which the Board of Directors was assessing the Proposed Buyout because of the interestedness of one of the two members of the Special Committee they formed. The Board of Directors responded to that demand, exclaiming that the compromised Special Committee would determine whether its member was independent. Thus, defendants have improperly put the fox in charge of the hen-house.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), (c), and (d) as Plaintiff and the defendants are citizens of and domiciled in different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.  This action is not a collusive one to confer jurisdiction on this Court.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because one or more of the defendants, including Exco, either resides in or maintains executive offices in this District, and a substantial portion of the transactions and wrongs that are the subject of this complaint, occurred in substantial part in this District. Finally, the defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

7.      Plaintiff Kathy Guerra is and was, at all times relevant hereto, a holder of Exco common stock.  Plaintiff is a citizen of New Jersey.

8.      Nominal Defendant Exco is a Texas corporation with its headquarters located at 12377 Merit Drive, Suite 1700, Dallas, Texas 75251.  Exco is an oil and natural gas exploration, exploitation, development and production company, with principal operations in East Texas, North Louisiana, Appalachia and West Texas.  Exco common stock is traded on the New York Stock Exchange under the symbol "XCO." Exco is a citizen of Texas.

9.      Defendant Douglas H. Miller ("Miller") has been a director of the Company, Chairman of the Board of Directors and Chief Executive Officer since December 1997. Mr. Miller was Chairman of the Board of Directors and Chief Executive Officer of Coda Energy, Inc., or Coda, an independent oil and natural gas company, from October 1989 until November 1997 and served as a director of Coda from 1987 until November 1997.  As of October 29, 2010,

3

Miller beneficially owned 6,572,308 shares of Exco common stock including options to acquire 2,005,000 shares of Exco common stock, or 3.1% of the Company's outstanding stock.   Miller is a citizen of Dallas, Texas.

10.     Defendant Stephen F. Smith ("Smith") has been a director of the Company and Vice Chairman of the Board since June 2004.  Smith was appointed President and Secretary in October 2005, and served as Secretary until April 2006.  Smith began serving as Chief Financial Officer in June 2009.  Smith was previously a director of the Company from March 1998 to July 2003.  As of July 22, 2010, Smith beneficially owned 430,220 shares of Exco common stock. Smith is a citizen of Dallas, Texas.

11.     Defendant Jeffrey D. Benjamin ("Benjamin") has been a director of the Company since October 2005 and was previously a director of the Company from August 1998 through July 2003 and a director of Exco's parent holding company from July 2003 through its merger into Exco.  Since June 2008, Benjamin has been a Senior Advisor to Cyrus Capital Partners, LP. From September 2002 until June 2008, Benjamin was a Senior Advisor to Apollo Management, LP.  Benjamin is a citizen of New York, New York.

12.     Defendant Vincent J. Cebula has been a director of the Company since March 30, 2007.  Cebula previously served as a director of Exco Resources and Exco Holdings Inc. from July 2003 until October 2005.  Cebula is a Managing Director of Jefferies Capital Partners, a private equity investment firm.  Prior to joining Jefferies in November 2007, Cebula was a Managing Director of defendant Oaktree Capital Management, L.P., a global investment firm, and its predecessor where he was a founding member of Oaktree's Principal Opportunities Funds since 1994.  Cebula is a citizen of New York, New York.

13.     Defendant Earl E. Ellis ("Ellis") has been a director of the Company since October 2005 and was previously a director of the Company from March 1998 through July 2003.  Ellis served as a director of Coda from 1992 until 1996, while defendant Miller was Chairman of the Coda Board.  As of October 1, 2010, Ellis beneficially owned 571,306 shares of Exco common stock.  Ellis is a citizen of Pinehurst, North Carolina.

14.     Defendant B. James Ford ("Ford") has been a director of the Company since December 1, 2007.  Ford is a Managing Director of Oaktree where he has worked since 1996. Ford is a co-portfolio manager of Oaktree's Principal Opportunities Funds, which invest in controlling and minority positions in private and public companies.  Ford is a citizen of Pacific Palisades, California.

15.     Defendant Mark Mulhern ("Mulhern") has been a director of the Company since February 1, 2010.  As of October 1, 2010, Mulhern owned 472,330 shares of Exco common stock.  Mulhern is a citizen of Apex, North Carolina.

16.     Defendant T. Boone Pickens ("Pickens") has been a director of the Company since October 2005 and was previously a director of the Company from March 1998 through July 2003.  Pickens is also Chairman and Chief Executive Officer of BP Capital LP.  As of October 29, 2010, Pickens owned 10,648,100 of Exco common stock, or 5.0% of the Company's outstanding shares.  Pickens is a citizen of Pampa, Texas.

17.     Defendant Jeffrey S. Serota ("Serota") has been a director of the Company since March 30, 2007.  Serota previously served as a director of Exco Resources and Exco Holdings from July 2003 until October 2005.  Serota has served as a Senior Partner of defendant Ares Management LLC, an alternative asset investment firm, since September 1997.  Serota is a citizen of Manhattan Beach, California.

18.     Defendant Robert L. Stillwell ("Stilwell") has been a director of the Company since October 2005.  Stillwell has served as the General Counsel of BP Capital LP, Mesa Water, Inc. and affiliated companies engaged in the petroleum business since 2001.  Stillwell is also Vice President and Treasurer for the T. Boone Pickens Foundation.  Stillwell is a citizen of Dallas, Texas.

19.     Defendants Miller, Smith, Benjamin, Cebula, Ellis, Ford, Mulhern, Pickens, Serota and Stulwell are referred to herein collectively as the "Individual Defendants."

20.     Defendant Oaktree Capital Management, L.P. ("Oaktree"), is a Delaware limited partnership and is a global alternative and non-traditional investment manager with $75 billion in assets under management as of June 30, 2010.  As of October 29, 2010, Oaktree, through its affiliated entities, owned 34,778,946 shares of Exco common stock, or 16.4% of the Company's outstanding shares.  Oaktree's global headquarters are located at 333 South Grand Ave., 28th Floor, Los Angeles, CA 90071.

21.     Defendant Ares Management LLC ("Ares"), is a Delaware limited liability company and is a private equity firm specializing in managing assets in both the private equity and leveraged finance markets.  Ares headquarters are located at 2000 Avenue of the Stars, 12th floor, Los Angeles, CA 90067.  As of October 29, 2010, Ares, through its affiliated entities, owned 12,946,537 shares of Exco common stock, or 6.1% of the Company's outstanding shares.  Defendants Oaktree and Ares are named herein as aiders and abettors to the breaches of fiduciary duty described herein.

22.     Defendants Miller, Pickens, Oaktree, and Aresare collectively referred to herein as the "Management Buyout Group."  The Management Buyout Group, through their affiliated entities and persons collectively own approximately 30.2% of the outstanding shares of Exco

common stock, including the shares that may be acquired upon exercise of such options held by such persons.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

23.     By reason of the above Individual Defendants' positions with the Company as directors and/or officers, said individuals are in a fiduciary relationship with the Company and the public stockholders of Exco who are being and will be harmed by the defendants' actions described herein and owe the Company and its public shareholders a duty of highest good faith, fair dealing, loyalty and full and adequate disclosure.

24.     Each of the Individual Defendants is required to act in good faith, in the best interests of Exco and its shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the applicable state law requires the directors to take all steps reasonably required to maximize the value of the Company and thereby the value shareholders will receive rather than use a change of control to benefit themselves.  To comply with this duty, the directors of a corporation may not take any action that:

(a)     adversely affects the value of the Company;

(b)     contractually prohibits them from complying with or carrying out their fiduciary duties;

(c)     discourages or inhibits alternative offers to purchase control of the corporation or its assets; or

(d)     will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the Company and its shareholders.

7

25.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Exco, are obligated under applicable law to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

(b)     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     enriching themselves unjustly at the expense or to the detriment of the Company and its public shareholders.

26.     In addition, Exco maintains a *Code of Business Conduct and Ethics for Directors, Officers and Employees* ("Code of Conduct").  Exco directors know – and by virtue of its publication of the Code of Conduct on the internet, shareholders expect – that even if an individual's private interest "appears to interfere with the interests of the Company as a whole, a conflict of interest arises.  As each of the Individual Defendants knows, "Even the appearance of a conflict of interest may be as damaging as an actual conflict and should be avoided." (Emphasis added).  Exco's Code of Conduct states that "[a] conflict situation can arise when a[]. . . director takes actions or has interests that may make it difficult to perform his or her Company work objectively and effectively."  Last, in describing general conflicts of interest, the Individual Defendants know that "a conflict of interest is likely to arise" if they "cause the Company to engage in business transactions with relatives or friends."[1]

---

[1] Having established the conflict rules in the Code of Conduct, Exco allows the Board of Directors to determine affirmatively that a disclosed relationship is immaterial and not a conflict of interest.

27.     Plaintiff alleges herein that Defendants, separately and together, in connection with the Proposed Buyout, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith, and independence owed to Exco and its shareholders. Defendants stand on both sides of the transaction, engaging in self dealing and obtaining for themselves personal benefits, including personal financial benefits not shared equally by the Company or its shareholders.   As a result of Defendants' self dealing and divided loyalties, Defendants are not realizing the full value of the Company in the Proposed Buyout and the Company's shareholders will not receive adequate or fair value for their Exco common stock in the Proposed Buyout.

## SUBSTANTIVE ALLEGATIONS

28.     Exco was incorporated in October 1955, and is an independent oil and natural gas company engaged in the exploration, exploitation, development and production of onshore North American oil and natural gas properties. The main focus of the Company's operations are conducted in key North American oil and natural gas areas including East Texas, North Louisiana, Appalachia and the Permian oil basin.   The Company conducts these oil and gas producing operations both on a standalone basis and through joint ventures in conjunction with other companies.   In addition to oil and natural gas producing operations, the Company also owns a 50% interest in a midstream joint venture in the East Texas/North Louisiana area.  As of December 31, 2009, Exco's Proved Reserves were approximately 1.0 Tcfe, of which 96.5% were natural gas and 67.1% were Proved Developed Reserves. As of December 31, 2009, the PV-10 and the Standardized Measure of the Company's Proved Reserves was $747.7 million.

29.     Historically, the Company used acquisitions of producing properties with additional development drilling and workover opportunities and vertical drilling of development wells in established producing areas as its vehicle for growth.  As a result of recent acquisitions,

the Company has now accumulated an inventory of drilling locations and acreage holdings with significant potential in the Haynesville/Bossier and Marcellus shale resource plays. According to the Company, this shale potential has allowed the Company to alter its concentration from workover opportunities and vertical drilling to the exploitation of the shales in question, primarily through horizontal drilling. The Company has further stated that future acquisitions will continue to focus on increasing the Company's shale resource holdings in the East Texas/North Louisiana and Appalachian areas.

30.     Since the shale resource plays are capital intensive and require significant expenditures for drilling, completing, treating and pipeline take-away capacity, the Company has entered into joint venture transactions to jointly develop and upstream these assets, and simultaneously expand Exco's midstream infrastructure. Through these joint ventures the Company has been able to enhance its financial flexibility while developing these assets at an accelerated pace.

31.     Consistent with this strategy of joint venturing the development of assets, in 2009 the Company ramped up the Haynesville shale development by entering a joint venture with BG Group, of which defendant Pickens is Chairman and CEO and defendant Stillwell is General Counsel. The Company further began to de-leverage its balance sheet and executed a divestiture program to allow for increased attention on exploitation of our shale play assets. The closing of the Company's upstream and midstream joint venture transactions with BG Group, coupled with the successful divestiture program, provided Exco with cash to execute the horizontal drilling program in East Texas/North Louisiana and strategically add to its acreage position, while simultaneously reducing the Company's debt by $1.8 billion. In addition to the cash received from BG Group in connection with the upstream joint venture transaction, BG Group also agreed

to fund $400 million of capital development attributable to Exco's 50% interest in the venture, or the BG Carry, with BG Group paying 75% of Exco's share of drilling and completion costs in the Haynesville/Bossier shales until the $400.0 million funding is satisfied, substantially reducing the costs of exploiting the Haynesville/Bossier shales to the Company.

32.     Commenting on the success of this strategy, on February 23, 2010 defendant Miller stated:

> 2009 was a transformational year for EXCO. We achieved everything we set out to do, starting with our successful drilling program and results in the Haynesville area, execution of our divestiture program, including our strategic partnership with BG Group, and the deleveraging of our balance sheet. In Appalachia, we continued evaluating our Marcellus shale assets and spud our first full length horizontal well. All of this was accomplished in spite of a very difficult commodity price environment. Our derivative program provided us with the ability to execute our plans over a long-term horizon. We have completed our divestiture program enabling us to focus on our shale assets. We began 2010 with production of approximately 234 Mmcfe per day. This production level represents a new baseline which we will use to evaluate our future results. Already in 2010, our net production has increased to a current level in excess of 265 Mmcfe per day. We have increased our operated horizontal rig count to 13 in the Haynesville and plan to increase that rig count to at least 14 for the rest of the year. We also plan to run at least one operated horizontal rig in Appalachia throughout 2010 while we continue our testing and evaluations in that area. We continue to make significant investments in our people and technology to maximize the value of our shale assets. With our concentrated portfolio of Haynesville and Marcellus shales, we are well positioned for significant reserve additions and organic production growth.

33.     Again, in a letter to Exco shareholders on March 23, 2010, defendant Miller stated, in relevant part:

> *For EXCO, 2009 was a highly successful year of transformation.* Historically, EXCO based much of its growth on acquisitions. *Over the years we assembled acreage in our core operating areas, two of which turned out to contain what many believe will be the most prolific natural gas finds in U.S. history—the Haynesville and Marcellus shale plays.* With the tremendous exploration and development opportunities in these two plays we elected to divest various non-strategic properties across our portfolio which resulted in our exit from Ohio, Northwest Pennsylvania, the Rockies, and our Mid-Continent Division, among others. As a result, using year-end NYMEX strip pricing, we ended 2009 with 1.3 Tcfe of proved reserves with significant upside potential consisting of 1.8 Tcfe of

probable and possible reserves and 12.8 Tcfe of potential resources. As of February 2010 we hold approximately 54,000 net acres in the Haynesville play and approximately 343,000 net acres in the Marcellus play.

We are also very excited about our joint ventures in East Texas/North Louisiana with BG Group plc, or BG Group. BG Group, which has complementary skills to EXCO, has supplemented our team with 13 secondees who have experience in upstream and midstream operations. *As part of the joint venture arrangement, our finding and development costs on deep wells in the joint venture will be significantly lower going forward with BG Group paying 75% of EXCO's share of drilling and completion costs up to $400 million.*

*EXCO's focus on financial flexibility was realized through the combination of asset sales and joint venture proceeds resulting in $2.1 billion of proceeds which enabled us to reduce our outstanding debt by 60%.* This has "right sized" our balance sheet to better support our drilling program while still providing capacity under our revolving credit facility for additional acreage purchases and opportunistic acquisitions of assets in our core areas.

* * *

*Our drilling success in the Haynesville shale has exceeded our expectations. In February 2010, we had 13 operated horizontal rigs drilling. We have averaged an initial production rate of 22.8 Mmcf/d in DeSoto Parish, and we plan to complete 20-30 wells per quarter throughout 2010. Our operations team has been very successful in reducing the average number of days from spud to rig release by nearly 50%. We have recently drilled our first full-length lateral Marcellus shale well in central Pennsylvania and are making preparations to complete the well. We are very excited about our early Haynesville drilling results and prospects for the Marcellus shale.*

With the significant increase in our production levels in the Haynesville shale, our marketing team and the midstream team of TGGT Holdings, in which we own a 50% interest, are diligently working to secure sufficient pipeline capacity to meet our delivery needs both now and in the future. This has led to expansion of our existing gathering systems in 2009, with additional capacity increases slated for 2010 as well. This will increase the number of market outlets available for our production which will allow our marketing team to negotiate the best prices possible for our natural gas. In Pennsylvania and West Virginia, the pipeline infrastructure is less developed throughout the region. As a result, to ensure there is sufficient future capacity to meet our production delivery requirements we are working with major marketing entities to move our gas until firm transportation capacity is available on the interstate markets.

34.     The Company continued this strategy in 2010, and as reported by defendant Miller on May 4, 2010:

The first quarter of 2010 was another successful and productive quarter for EXCO. *We continued the successful Haynesville and Bossier shale development in East Texas/North Louisiana, completing 19 additional operated Haynesville wells with average IP rates over 20 Mmcf per day and completing our first successful Bossier well.* We drilled one horizontal Marcellus well, and have since completed two horizontal wells with encouraging results. *We continued to expand our acreage positions in the Haynesville and Marcellus plays and also reached an agreement on the Common acquisition, which will add nearly 15,000 additional net acres to our portfolio.*

Our capital spending program is expected to be funded by cash flow, and the new credit facility provides us with capital to continue adding to our acreage positions in our shale plays. *Since the majority of our acreage is held-by-production, we also have a tremendous amount of flexibility in our capital program.* Our announced acquisition of Common is a great example. The current economic environment created an opportunity for us to acquire a significant acreage position at an attractive price. As a result of our 2009 transactions, we have ample liquidity to fund this acquisition and, because our legacy assets are being held-by-production, we have the flexibility to move existing rigs to the Common acreage without increasing our activity level. We are currently evaluating our drilling plans for the remainder of 2010 as a result of current commodity prices and in anticipation of closing the Common acquisition.

35.     In accordance with the Company's strategy to utilize joint ventures to develop shale assets, on May 10, 2010, the Company announced a new joint venture with BG Group for the development and operation of Exco's Appalachian assets located primarily in Pennsylvania and West Virginia.  Under the terms of the joint venture agreement, Exco sold BG Group membership interests in companies that hold 50% of Exco's producing and non-producing assets in Appalachia, and Exco and BG Group agreed to jointly own an operating company that will continue serving as operator of the properties subject to oversight from a Management Board with equal representation from Exco and BG Group.  In exchange, Exco received total consideration of $950 million.  Further, Exco and BG Group agreed to jointly pursue the construction and expansion of gathering systems, pipelines and treating and processing facilities through a newly formed and jointly owned midstream company.

36.     Defendant Miller again boasted of the success of the Company's strategy and the new joint venture stating:

> We are very pleased and excited about this new joint venture with BG Group. Our existing joint venture with BG Group in East Texas/North Louisiana has been a tremendous success. We share a belief that current market conditions will continue to provide opportunities to grow our acreage footprint in both of these areas. We also share a common vision of the importance of midstream and marketing efforts to fully realize the value of our upstream assets and both believe the Marcellus will be an infrastructure led play. ***This transaction is a significant event for EXCO, both in terms of the ability to aggressively increase the development of our existing Marcellus assets and pursue additional opportunities while continuing to strengthen our balance sheet.***

37.     Following the announcement of this transaction, defendant Miller, or other Exco executives with Miller's assent, in presentations to analysts and investors beginning on June 8, 2010, presented a net asset value summary, including its most recent acquisitions, showing a "Low Case" net asset value for the Company of $25.30 per share and a "High Case" net asset value per share of $36.20 per share.

38.     One month later, management prepared new materials for analysts and investors meetings beginning on July 12, 2010 which showed an increase in the Company's "Low Case" net asset value scenario to $25.43 per share and the "High Case" net asset value to $36.94 per share.

39.     Noticeably, defendants excised the charts set forth above from the September analysts and investors presentation materials, most likely because Miller and his group were already contemplating the Proposed Buyout. Moreover, a subsequent slide labeled "Unmatched NAV Growth" was also removed from the presentation materials, which as demonstrated below in July laid out a road map to a net asset value of $50 to $60 by 2014:

|  | 2010E[1] | 2014 Target[2] |
| --- | --- | --- |
| Production (Mmcfe/d) | 319 | 900-1,000 |
| Proved Reserves (Tcfe) | 1.2 | 5.0-6.0 |

14

|  | 2010E[1] | 2014 Target[2] |
|---|---|---|
| EBITDA (Millions) | $550 | $1,250-$1,600 |
| Cash Flow (Millions) | $500 | $1,200-$1,550 |
| Capital Expenditures (Millions) | $488 | $1,100-$1,300 |
| 50% of TGGT EBITDA (Millions) | $40 | $160 |
| Net Debt (Millions) | $550 | $500-$800 |
| NAV per Share | $25-$35 | $50-$60 |

(1) Ranges based on the midpoint of 2010 guidance.
(2) 2014 prices based on $5.00-$6.00 natural gas and range of production volumes

40.     Such "Unmatched NAV Growth" estimates are based on $5 to $6 natural gas, which is consistent with where other companies in the industry, such as Chesapeake Energy Corporation, see prices going over the next couple years, and the Company's own previously reported plan of 30% to 40% annual growth for the next five years.

41.     Acting for their own benefit and to the detriment of the Company, through this Proposed Buyout, defendants seek to deprive Exco's public shareholders of reaping the benefits of the Company's "Unmatched NAV Growth," increasingly positive prospects and future financial success.

## The Proposed Buyout

42.     On November 1, 2010, Exco announced that its Chairman and Chief Executive Officer, defendant Miller, had submitted to the Board of Directors a proposal to purchase all of the outstanding shares of stock of the Company not already owned by Mr. Miller for a cash purchase price of $20.50 per share.   The press release further stated that Miller had advised the Company that J.P. Morgan Securities LLC and Goldman, Sachs & Co. are acting as his financial advisors and Vinson & Elkins LLP is acting as his legal counsel in connection with the Proposed Buyout.

43.     The full text of the proposal letter from defendant Miller setting forth the terms of the Proposed Buyout is as follows:

October 29, 2010

Board of Directors
EXCO Resources, Inc.
12377 Merit Drive, Suite 1700
Dallas, Texas

Gentlemen:

I am pleased to express my interest in acquiring all of the outstanding shares of common stock of EXCO Resources, Inc. (the "Company") at a cash purchase price of $20.50 per share. *I have preliminarily discussed this proposal with Oaktree Capital Management, L.P., on behalf of its funds and accounts under management, Ares Management LLC, on behalf of one or more of its funds under management, and Boone Pickens, and each has expressed an interest in pursuing the acquisition with me.*

I believe that $20.50 per share is very compelling and in the best interest of the Company and its public shareholders and that the shareholders will find this proposal attractive. This valuation represents a premium of 38% over today's closing price of the Company's common shares. The acquisition would be in the form of a merger of the Company with a newly-formed acquisition vehicle.

*I would continue as Chairman and Chief Executive Officer following the transaction and expect that the Company's senior management team would remain in place.* I anticipate continuing to run the business in accordance with our current practice and maintaining the Company's valuable employee base, which we view as one of its most important assets.

I would expect to reinvest a significant portion of my equity ownership as part of this transaction. The remaining funds necessary to consummate the transaction would come from senior management, outside investment partners and, as needed, third party debt financing.

My familiarity with the Company means that I will be in a position to proceed very quickly with this transaction. I expect that you will establish a special committee of independent directors to consider this proposal on behalf of the Company's public shareholders with guidance from its own legal and financial advisors. I welcome the opportunity to present this proposal to the special committee as soon as possible.

\* \* \*

I look forward to working with the special committee and its legal and financial advisors to complete a transaction that is attractive to the Company's public shareholders. Should you have any questions, please contact me.

Sincerely,

Douglas H. Miller

44.    The $20.50 per share offered in the Proposed Buyout is a woefully inadequate price, and fails to reflect the true value of the Company or its assets.  While defendant Miller claims the consideration offered in the Proposed Buyout represents a premium of 38% over the closing price of Exco stock immediately before the announcement, in fact it represents a 24% discount to the Company's own low case estimate of the value of the net assets of the Company and an 80% discount to the Company's high case net asset valuation as recently as July 2010.

45.    The consideration is also significantly below analysts' estimates and price targets. According to Thomson/First Call, the mean price target established by analysts for Exco common stock is $21.30, and at least one analyst has a price target of $29.00, or 41% higher than the consideration offered by the Management Buyout Group.  This grossly inadequate consideration has led at least one reporter to label the transaction a "Takeunder," rather than a "Takeover."

46.    The financial unfairness of the Proposed Buyout price is compounded by the woefully deficient process employed by the Individual Defendants to evaluate the Proposed Buyout.  Notably, on November 4, 2010 the Company Board announced the appointment of a special committee consisting of defendants Cebula and Mulhern to, among other things, evaluate and determine the Company's response to the Proposed Buyout.  Defendant Cebula, however, is a former principal of Oaktree and a founding member of Oaktree's Principal Opportunities Funds.  Since Oaktree is the Company's largest shareholder and is a member of the Management Buyout Group, Cebula – 50% of the special committee -- is subject to a debilitating conflict of interest with respect to the Proposed Buyout.

47.     In light of the foregoing, the Individual Defendants must, as their fiduciary obligations require:

(a)     undertake an appropriate evaluation of Exco's worth as a merger/acquisition candidate;

(b)     take all appropriate steps to enhance Exco's value and attractiveness as a merger/acquisition candidate;

(c)     take all appropriate steps to effectively expose Exco to the marketplace in an effort to create an active auction for Exco, including but not limited to engaging in arm's-length negotiations with the Management Buyout Group and acting independently so that the interests of Exco and its public shareholders will be protected; and

(d)     adequately ensure that no conflicts of interest exist between the Individual Defendants' own interests and their fiduciary obligation to maximize both the Company's value and stockholder values or, if such conflicts exist, to ensure that all conflicts be resolved in the best interests of Exco and its public shareholders.

48.     As a result of Individual Defendants' failure to take such steps, the Company and its shareholders will be damaged in that the Company will be under-valued, its shareholders will not receive their proportionate share of the value of the Company's assets and business and will be prevented from obtaining a fair price for their common stock.

## DERIVATIVE AND DEMAND FUTILITY/WRONGFUL REJECTION OF DEMAND

49.     Plaintiff brings this action derivatively in the right and for the benefit of Exco to redress injuries suffered, and to be suffered, by Exco as a direct result of the breaches of fiduciary duty, as well as the aiding and abetting thereof, by the Defendants. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

50.     Plaintiff will adequately and fairly represent the interests of Exco in enforcing and prosecuting its rights.   Plaintiff is and was an owner of the stock of Exco during all times relevant to the Individual Defendants' wrongful course of conduct alleged herein.

51.     On November 8, 2010, Plaintiff made a demand pursuant to Tex. Bus. Orgs Act §21.553.   Plaintiff attaches that demand letter hereto as Exhibit A.   In the letter, Plaintiff summarized why the per-share purchase price defendant Miller has proposed is inadequate.

52.     In addition, Plaintiff described an impermissible conflict that fatally corrupts the Special Committee process the Board of Directors has implemented.   Plaintiff described that defendant Cebula is hopelessly conflicted by virtue of his former service as a principal of Oaktree Capital.   In addition to demanding that the Board reject the Proposed Buyout unless and until Miller and his group's offer more closely reflects the value of Exco, Plaintiff demanded that the Board of Directors reconstitute the Special Committee with truly independent directors under well-settled principles of Texas Law, New York Stock Exchange Rules and Exco's own Code of Business Conduct.

53.     Still further, Plaintiff demanded that in light of the Board's collective appointment of defendant Cebula to the Special Committee that the directors, themselves, were disabled from considering Plaintiff's demand.   Pursuant to Tex. Bus. Orgs. Code §21.554(a)(3), Plaintiff demanded, therefore, that the Board seek an emergency order appointing a panel of disinterested persons to consider Plaintiff's demand.

54.     On November 15, 2010, Plaintiff received a letter in response to her November 8, 2010, demand.   Plaintiff attaches that response hereto as Exhibit B.   In that response, the Board of Directors neither rejects nor accepts Plaintiff's allegations.   Rather, after defending their action with respect to appointing defendant Cebula to the Special Committee, the Board wrote:

The Special Committee's charge includes, among other things, to review and evaluate the concerns and demands raised in your letter and to take whatever actions, if any, it deems appropriate in response to your letter.

55.    Thus Defendants have purposefully reposed the judgment about the independence of the Special Committee in the hands of the very persons whose independence is at issue.

56.    By virtue of this refusal to consider Plaintiff's demand except to allow the conflicted party to render judgment on his own conflict, the Board has violated Tex. Bus. Orgs. Code §21.554(a) by not determining how to proceed with respect to Plaintiff's demand as required by the statute.

57.    Defendants' violation of the letter and spirit of §21.554 of the Tex. Bus. Orgs. Code creates an intractable situation that requires immediate action.  Pursuant to subsection (a)(3), a panel of one or more independent and disinterested persons should be appointed immediately to consider Plaintiff's demand.  Without this, the Special Committee process and the merger process as a whole will be fatally flawed.  As such, irreparable injury to the corporation and its shareholders will result by waiting for the expiration of the 90-day waiting period.

## REASONABLE DOUBT EXISTS THAT THE EXCO BOARD IS ENTITLED TO THE BUSINESS JUDGMENT PROTECTION

58.    For the reasons set forth herein, a reasonable doubt exists that the Board's appointment of the Special Committee, and approval and/or acquiescence to the Proposed Buyout was the product of a valid exercise of business judgment.

59.    The Individual Defendants served on Committees that were to provide them and, therefore, the shareholders, with valuable information regarding the activities of the Company.

60.     As part of their fiduciary duties, the Individual Defendants had an obligation to inform themselves, prior to making a business decision, of all material information reasonably available to them.

61.     Accordingly, the Individual Defendants, as of the filing of this complaint, faced a substantial likelihood of liability of an action asserting the claims alleged herein, thus disabling the Board from being capable of making a disinterested, independent decision about whether to prosecute this action. Therefore, demand on the Board, although made, was futile in retrospect.

## COUNT I

### Claim for Breach of Fiduciary Duties
### Against the Individual Defendants

62.     Plaintiff repeats and realleges each allegation set forth herein.

63.     The Individual Defendants have violated fiduciary duties of care, loyalty, candor and good faith owed to Exco and its public shareholders.

64.     The Individual Defendants have appointed defendant Cebula – an interested director with strong ties to defendant Oaktree as a former principal thereof – to the Special Committee. By virtue of the other director defendants appointing him and his agreeing to serve on the Special Committee, defendants have breached their duty of loyalty by charging a person with significant ties to Oaktree to determine whether and at what price Oaktree can participate in the purchase of Exco. That appointment taints the entire process of a disinterested vetting of the Proposed Buyout and violates the duty of loyalty the Individual Defendants owe to Exco.

65.     In addition, the Proposed Buyout is a means by which those involved in the buyout group are entrenching themselves at the expense of Exco and its public shareholders. Defendants Miller, Smith, Ford, Serota, and Pickens are members of the Management Buyout Group and stand on both sides of the Proposed Buyout. They will derive a person profit and

advantage by reason of their current positions with Exco that is distinct from the Company's current shareholders. Given their interest, the fairness of the Proposed Buyout must be strictly scrutinized with defendants bearing the burden of showing that the transaction is fair to the corporation and that it carries the earmark of an arms-length bargain.

66.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to consummate the Proposed Buyout and thereby assure the continuation of the positions and compensation with the Company, even though the consideration offered in the Proposed Buyout is grossly inadequate and was arrived at through an unfair process to the injury of Exco and its public shareholders.

67.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to Exco and its public shareholders because, among other reasons, they failed to take steps to maximize the value of Exco to its public shareholders and failed to appoint an independent special committee to evaluate the Proposed Buyout, and thereby favored their own, or their fellow directors' or executive officers' interests to secure all possible benefits for the Management Buyout Group, rather than protect the best interests of Exco and its public shareholders.

68.     The Individual Defendants dominate and control the business and corporate affairs of Exco, and are in possession of private corporate information concerning Exco's assets, business and future prospects. Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Exco which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing shareholder value.

69.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Exco and its public shareholders.

70.     As a result of the actions of the Individual Defendants, Exco and its public shareholders will suffer irreparable injury in that shareholders have not and will not receive their fair portion of the value of Exco's assets and businesses and have been and will be prevented from obtaining a fair price for their common stock.

71.     Unless Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Exco and its public shareholders, all to the irreparable harm of the Company.

72.     Plaintiff, on behalf of nominal defendant Exco, has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Exco and its public shareholders be fully protected from the immediate and irreparable injury which the Individual Defendants' actions threaten to inflict.

## COUNT II

### Claim Against Oaktree and Ares for Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duties

73.     Plaintiff repeats and realleges each and every allegation set forth herein.

74.     The Individual Defendants breached their fiduciary duties to Exco and the Exco shareholders by the actions alleged supra.

75.     Such breaches of fiduciary duties could not, and would not, have occurred but for the conduct of defendants Oaktree and Ares, which, therefore, aided and abetted such breaches through entering into the Proposed Buyout.

23

76.     Defendants Oaktree and Ares had knowledge that they were aiding and abetting the Individual Defendants' breaches of fiduciary duties to Exco and its shareholders.

77.     Defendants Oaktree and Ares rendered substantial assistance to the Individual Defendants in their breaches of their fiduciary duties to Exco and its shareholders.

78.     As a result of defendants Oaktree and Ares' conduct of aiding and abetting the Individual Defendants' breaches of fiduciary duties, the Company and its shareholders have been, and will be, damaged in that they have been, and will be, prevented from obtaining the fair value of the Company and its assets.

79.     As a result of the unlawful actions of Oaktree and Ares, the Company and its shareholders will be irreparably harmed in that they will be prevented from obtaining the fair value of the Company and its assets.   Unless enjoined by the Court, Oaktree and Ares will continue to aid and abet the Individual Defendants' breaches of their fiduciary duties owed to the Company and its shareholders, and will aid and abet a process that inhibits the maximization of shareholder value and the disclosure of material information.

80.     The Company and its shareholders have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the other Exco shareholders be fully protected from immediate and irreparable injury which Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor and against the Defendants as follows:

A.     Declaring that this action is properly maintainable as a derivative action and declaring plaintiff to be an adequate representative of the Company;

B.      Declaring that the conduct of the Individual Defendants in approving the Proposed Buyout and failing to make reasonable efforts to maximize the value of the Company and its assets and other acts and omissions set forth herein are breaches of the Individual Defendants' fiduciary duties;

C.      Preliminarily and permanently enjoining the Individual Defendants and all persons acting in concert with them from taking any steps to consummate the Proposed Buyout on the terms presently proposed;

D.      Preliminarily and permanently enjoining the Individual Defendants from initiating any defensive measures that would inhibit the Individual Defendants' ability to maximize value for Exco shareholders;

E.      Pursuant to Tex. Bus. Orgs. Code §21.554(a)(3), appointing a panel of one or more independent and disinterested persons qualified to make the determinations contemplated in §21.558 of the Code;

F.      To the extent the Proposed Buyout is consummated prior to this Court's entry of a final judgment, rescinding it and setting it aside or awarding rescissory damages;

G.      Awarding compensatory damages against defendants, individually and severally, in an amount to be determined at trial, together with pre-judgment and post-judgment interest at the maximum rate allowable by law;

H.      Awarding Plaintiff the costs, expenses, and disbursements of this action, including attorneys' and experts' fees and, if applicable, pre-judgment and post-judgment interest; and

I.      Awarding such other and further relief as this Court deems just, equitable, and proper.

Dated: November 22, 2010

By: _____

      Roger F. Claxton
      State Bar No. 0432900
10,000 North Central Expressway
Suite 725
Dallas, TX  75231
Tel: 214-969-9029
Fax: 214-953-0583
Email: roger@claxtonlaw.com


OF COUNSEL:

**FARUQI & FARUQI, LLP**
Jacob A. Goldberg
Sandra G. Smith
101 Greenwood Avenue, Suite 600
Jenkintown, PA  19046
Tel: 215-277-5770
Fax: 215-277-5771
Email: jgoldberg@faruqilaw.com

and

Anthony Vozzolo
369 Lexington Ave., 10th Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331

## FARUQI & FARUQI, LLP

### ATTORNEYS AT LAW

101 GREENWOOD AVENUE, SUITE 600
JENKINTOWN, PA 19046
(215) 277-5770

TELECOPIER: (215) 277-5771
WEBSITE:  www.faruqilaw.com

November 8, 2010

Douglas H. Miller, Chairman
Stephen F. Smith, Vice Chairman
Mr. Jeffrey D. Benjamin
Mr. Vincent J. Cebula
Mr. Earl E. Ellis
Mr. B. James Ford
Mr. Mark Mulhern
Mr. T. Boone Pickens
Mr. Jeffrey S. Serota
Mr. Robert L. Stillwell
c/o Exco Resources, Inc.
12377 Merit Drive, Suite 1700
Dallas, Texas 75251

> Re:   **Shareholder Demand Relating to Management**
> **Led Buyout of Exco Resources, Inc.**

Members of the Board of Exco Resources, Inc.:

We write on behalf of Kathy Guerra a current shareholder of Exco Resources, Inc. ("Exco" or the "Company").  Ms. Guerra has been a shareholder at least as of November 1, 2010, the date the Company announced that Douglas H. Miller ("Miller") had launched a management led bid to acquire all of the outstanding shares of Exco ("Management Buyout"). We write, pursuant to Tex Bus. Orgs. Code §21.553, demanding that Exco take certain actions detailed below in response to the Management Buyout.

On October 29, 2010, Mr. Miller launched his bid to take Exco private, communicating to you, the Exco Board, his offer to purchase all of the Company's outstanding common stock for $20.50 per share.  He disclosed several potential partners in pursuing the Management Buyout, including Oaktree Capital Management, L.P.  He also disclosed both his intention to remain as Exco's Chairman and CEO and his expectation that the Company's senior management would continue in place, following the execution of the Management Buyout.

In his October 29, 2010 letter to you, Mr. Miller touted the consideration he and his partners offered as a 38% premium over Exco's common stock price on the day before he made his offer.  The $20.50 per share offered, however, is woefully inadequate, failing materially to reflect the true value of the Company or its assets.  The price offered represents *a 24% discount*



**FARUQI & FARUQI, LLP**

The Board of Directors, Exco Resources, Inc.
November 8, 2010
Page – 2 –


to the Company's own low case estimate of the value of the net assets of the Company and an
80% discount to the Company's own high case net asset valuation as recently as July, 2010.
Moreover, as recently as April 9, 2010, Exco common stock was trading as high as $21.34, or
4% higher than the consideration Mr. Miller and his partners have offered.

The consideration is also significantly below analysts' estimates and price targets.
According to Thomson/First Call the mean price target established by analysts for Exco common
stock is $21.30, and at least one analyst has a price target of $29.00, or 41% higher than the
consideration offered by the Management Buyout group. This grossly inadequate consideration
has led at least one reporter to label the transaction a "Takeunder," rather than a "Takeover." As
such, Ms. Guerra demands that you reject the Management Buyout until the consideration Mr.
Miller and his group offer more closely reflects the value of the publicly traded shares of Exco.

In addition, the Company has announced that you, the Board, have appointed Messrs.
Cebula and Mulhern as the two members of the Special Committee. You have charged the
Special Committee with evaluating the Management Buyout and determining the Company's
response. Mr. Cebula, however, is a former principal of Oaktree Capital. Not only is Oaktree
Capital Exco's single largest shareholder, with beneficial ownership of 16.4% of Exco's
common stock as of April 29, 2010, but Mr. Miller has proposed it as one of his financial
partners in the Management Buyout. You were aware of this information before you appointed
Mr. Cebula to serve on the Special Committee. By virtue of these circumstances, Mr. Cebula is
hopelessly conflicted and may neither participate in the analysis of the Management Buyout nor
recommend whether the Board should vote to approve it. According to your own *Code of
Business Conduct and Ethics For Directors, Officers and Employees* ("*Code of Business
Conduct*") "[e]ven the appearance of a conflict of interest may be as damaging as an actual
conflict and should be avoided." The process the Board has used to determine whether to accept
Mr. Miller's Management Buyout, therefore, is fatally flawed and must not stand. Ms. Guerra
demands, therefore, that you reconstitute the Special Committee with truly independent directors
under well-settled principles of Texas law, New York Stock Exchange Rules and Exco's own
*Code of Business Conduct*.

More, in light of your collective appointment of Mr. Cebula to the Special Committee
with knowledge of his debilitating conflict, Ms. Guerra believes that each of you is disabled from
considering this demand. As such, Ms. Guerra demands, pursuant to Tex. Bus. Orgs. Code §
21554(a)(3), that you immediately move a Texas court for an emergency order for appointment
of a panel of one or more independent and disinterested persons to consider this demand. If you
take this step and agree to halt the fatally flawed Special Committee process you have
commenced, Ms. Guerra will consider extending the time for you to answer this demand.

FARUQI & FARUQI, LLP

The Board of Directors, Exco Resources, Inc.
November 8, 2010
Page – 3 –

 

In light of the quick pace at which Mr. Miller intends to complete his proposed Management Buyout, time is of the essence.  The failure of the Board to act on this demand will cause irreparable harm to Exco and its public shareholders.  As such, we ask that you inform us of your determination with respect to this demand no later than Monday, November 15, 2010.  If you ignore or reject this demand, Ms. Guerra will immediately pursue a derivative action on Exco's behalf against you and others.

We look forward to hearing from you.

Yours Sincerely,

Jacob A. Goldberg

cc:    CT Corporation System (via Federal Express)
       350 North Saint Paul Street
       Dallas, TX 75201

       Thomas W. Christopher, Esquire (via Federal Express)
       Kirkland & Ellis LLP
       601 Lexington Avenue
       New York, NY 10022

       Lyle G. Ganske, Esquire (via Federal Express)
       Jones Day
       901 Lakeside Avenue
       Cleveland, OH 44114-1190

       Vinson & Elkins (via Federal Express)
       2001 Ross Avenue
       Dallas, TX 75201-2975



# EXCO Resources, Inc.

12377 Merit Drive • Suite 1700 • Dallas, Texas 75251
Phone (214) 368-2084 • Fax (972) 367-3559

November 15, 2010

*Via Facsimile and U.S. Mail*

Jacob A. Goldberg, Esq.
Faruqi & Faruqi, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046

     Re:  EXCO Resources, Inc.

Dear Mr. Goldberg:

     I write in response to your November 8 letter addressed to EXCO Resources, Inc.'s Board of Directors regarding the recently announced proposal by the Company's Chairman and CEO, Douglas Miller, to purchase all outstanding shares of EXCO stock (the "Proposal"). As your letter acknowledges, the Company recently announced that it has formed a Special Committee of outside, independent and disinterested directors to consider, among other things, the Proposal. With regard to your concern about Mr. Cebula's participation on the Special Committee, I can assure you that the Board carefully considered all relevant factors with respect to the appointments of Mr. Cebula and Mr. Mulhern, including Mr. Cebula's past employment with Oaktree Capital Management, L.P., and determined that neither member of the Special Committee has an interest that would interfere with his exercise of independent business judgment with respect to the Proposal or any of the other matters within its mandate.

     The Special Committee's charge includes, among other things, to review and evaluate the concerns and demands raised in your letter and to take whatever actions, if any, it deems appropriate in response to your letter. Your letter has been forwarded to the Special Committee's counsel, Thomas Christopher, at Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022. For your reference, the Company's outside counsel is Thad Behrens, at Haynes and Boone, LLP, 2323 Victory Avenue, Suite 700, Dallas, Texas 75219.

     Very truly yours,

*Larry Boen*

William L. Boeing
Vice President and General Counsel

# EXHIBIT B

JS 44 (Rev. 3/99)   **CIVIL COVER SHEET**   ORIGINAL

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS

Kathy Guerra Derivatively on behalf
of EXCO Resources, Inc.

### DEFENDANTS

Douglas H. Miller, Stephen F. Smith, Jeffrey D. Benjamin, Vincent J. Cebula, Earl E. Ellis, B. James Ford, Mark Mulhern, T. Boone Pickens, Jeffrey S. Serota, Robert L. Stillwell, Oaktreet Capital Management, and Ares Management, LLC

**(b)** County of Residence of First Listed Plaintiff   New Jersey
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Roger F. Claxton
10000 N. Central Expressway, Ste. 725
Dallas, Texas 75231
214-969-9029

Attorneys (If Known)

3-10CV2385-

RECEIVED NOV 2 2 2010

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

### II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- x 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| x 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | x☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

### V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- x 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION

(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Breach of Fiduciary Duties

### VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   x Yes   ☐ No

### VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE   11/22/10

SIGNATURE OF ATTORNEY OF RECORD   Roger F. Claxton

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____